Affirmed and Memorandum Opinion filed January 27, 2005









Affirmed and Memorandum Opinion
filed January 27, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00767-CR

____________

 

CHARLES DEWAYNE HARRIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

______________________________________________________

 

On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 910,553

______________________________________________________

 

M E M O R A N D U M   O P I N I O N

Appellant Charles Dewayne Harris
appeals his conviction for aggravated robbery. 
Appellant asserts the trial court erred in (1) failing to suppress
in-court identification testimony after the police used an allegedly
impermissibly suggestive pretrial identification procedure, and (2) allegedly
admitting evidence of an extraneous offense. 
We affirm.








I.  Factual and Procedural History

While
returning to her office after lunch on October 8, 2001, Sachie Canales, an
intern at a law firm, passed a man in the hallway of her office building.  She made eye contact and smiled at him.  A short time later, the man entered the
reception area of her office suite.  They
talked for three to four minutes about what types of cases her firm handled,
and then the man left.  About an hour
later, the man came into Canales=s office
and asked her about a legal consultation. 
The man placed his hand on Canales=s
shoulder, held up a pocketknife with the blade extended, and demanded her
purse.  He then ordered Canales to sit on
the couch, locked the door to the office suite, and closed the blinds on the
windows.  Canales unsuccessfully lunged
for the knife.  The man hit Canales
several times and knocked her to the ground. 
The assailant then left the office suite with Canales=s purse.  The assailant broke Canales=s nose
and cheekbone.  Canales spent several
days in the hospital because of her injuries.

In March 2002, about five months
after this incident, Canales attended a live line-up and also looked at a
police photo spread, but failed to identify anyone as her attacker.  Canales met with police detective Robert
Sherrouse in early April 2002, and described her attacker to him.  A few weeks later, Detective Sherrouse showed
Canales black and white surveillance photographs from another office building
and asked Canales to examine the pictures to determine if the man in the photos
was of the same body type as her attacker. 
Detective Sherrouse did not say that the man in the photos was her
attacker, but said that the man was a person he thought might have been
involved in her attack.  The facial
features of the man in the photos were not discernable, but Canales said that
the person had the same body type as her attacker.  At the end of April 2002, Canales was shown a
photo spread in which she positively identified appellant as her attacker.  Canales attended a live lineup the following
day, and she again positively identified appellant based on his appearance and
the sound of his voice.    








Appellant was charged with
aggravated robbery of Canales.  He
entered a Anot guilty@
plea.  During the pretrial motion to
suppress hearing and at trial, Canales identified appellant as her
attacker.  A jury found appellant guilty
and assessed punishment at forty years in the Texas Department of Criminal
Justice, Institutional Division.

II.  Analysis
and Discussion

A.        Was
the pretrial identification procedure unduly suggestive and, if so, did it
render the complainant=s in-court identification inadmissable?

 

In his first issue, appellant
argues that the trial court should have suppressed Canales=s
in-court identification of appellant because it was tainted by an
identification procedure appellant claims was unduly suggestive.[1]  

An in-court identification is
inadmissable if tainted by an unduly suggestive pretrial identification.  See Loserth v. State, 963 S.W.2d 770,
771 (Tex. Crim. App. 1998).  In
determining whether the trial court was correct in admitting an in-court
identification, the appellate court employs a two-step analysis, inquiring: (1)
if the pretrial procedure was impermissibly suggestive; and (2) if so, whether
the suggestive pretrial procedure gave rise to a very substantial likelihood of
irreparable misidentification at trial.  See Ibarra v. State, 11 S.W.3d 189,
195 (Tex. Crim. App. 1999).  It is the
risk of in-court misidentification that taints the
identification.  See Webb v. State,
760 S.W.2d 263, 269 (Tex. Crim. App. 1988). 
The defendant has the burden to show by clear and convincing evidence
that the in-court identification is unreliable. 
See Delk v. State, 855 S.W.2d 700, 706 (Tex. Crim. App.
1993).  If the indicia of reliability
outweigh the influence of an impermissibly suggestive pretrial identification,
the testimony is admissible.  Id. 








Under the first step of the
analysis, we evaluate the pretrial identification procedure to determine if it
was impermissibly suggestive.  See
Ibarra, 11 S.W.3d at 195. 
Appellant asserts that Detective Sherrouse showing Canales two
surveillance photos before she viewed the photo spread and the live lineup
impermissibly suggested appellant=s
in-court identification because the still surveillance photos depicted only one
black male.  At the time Detective
Sherrouse showed the surveillance photos he instructed Canales to compare only
the physical shape and size of the person in the photograph to the body type of
her attacker.  Because the photographs
are black and white, blurry, and show the person from a distance, nothing more
than the size and shape of the person can be deciphered from the
photographs.  One of the photographs is a
picture of the person from the back. 

Without deciding whether
Detective Sherrouse=s
pretrial identification procedure was impermissibly suggestive, we look to the
second step of the analysis and determine whether the procedure rendered
Canales=s
identification unreliable.  If Detective
Sherrouse=s procedure did not give rise to
a very substantial likelihood of irreparable misidentification at trial, there
would be no basis for reversing even if the procedure were impermissibly
suggestive.

Under the second phase of the
analysis, we assess the reliability of the in-court identification by looking
to the factors set forth in Neil v. Biggers, 409 U.S. 188, 199B200, 93
S. Ct. 375, 382B83, 34 L.
Ed.2d 401 (1972).  Ibarra, 11
S.W.3d at 195.  We weigh the following
five non-exclusive factors against the Acorrupting
effect of any suggestive identification procedure in assessing the reliability
under the totality of the circumstances@: (1) the
opportunity of the witness to view the criminal at the time of the crime; (2)
the witness=s degree of attention; (3) the
accuracy of the witness=s prior
description of the criminal; (4) the level of certainty demonstrated by the
witness at the confrontation; and (5) the length of time between the crime and
the confrontation.  Biggers, 409
U.S. at 199B200, 93 S. Ct. at 382B83.  Applying the five Biggers factors, we
find that there was not a substantial likelihood of misidentification at
trial.  








Canales had sufficient
opportunity to view appellant=s face at
the time of the crime.  Canales testified
that appellant=s face was probably less than a
foot away from hers at one point and she Asaw him
very, very clearly.@  Canales=s
testimony also indicated that she had a high degree of attention during and
before the attack.  She testified that a
picture of her assailant was embedded in her mind.  Shortly after the attack, she told police
that she could identify her attacker if she saw him again and provided a
detailed description of the assailant. The record does not show any major
discrepancy between Canales=s
pre-identification description of her attacker and appellant=s
description.  Although there was a slight
discrepancy between Canales=s
estimation of the assailant=s height
and weight, this minor variation does not rise to a level that would weigh
against a finding of reliability because the record reflects that Canales
identified appellant based on his facial features and the sound of his voice at
the pre-trial live lineup and later confirmed that identification at
trial.  Canales also identified appellant
with certainty and conviction at trial and testified that her identification was
based on what she saw at the time of the robbery.  Even though nineteen months had elapsed
between the attack and the trial, her in-court identification was reliable
because Canales never identified any other person as her attacker and
identified appellant each time he or his photograph was presented to her in a
lineup.  See, e.g., Delk,
855 S.W.2d at 705B08
(finding eighteen-month time span between robbery and in-court identification
did not undermine reliability because witness remembered details and provided
consistent testimony). 

Having reviewed the facts
relating to the reliability of Canales=s
in-court identification of appellant, we now weigh them against the effect of
the pretrial procedure utilized by Detective Sherrouse. We find that even if
the pretrial procedure were impermissibly suggestive, appellant did not meet
his burden of showing, by clear and convincing evidence, that the in-court
identification was unreliable. 
Accordingly, we find the trial court did not abuse its discretion by
allowing Canales=s
in-court identification.   Therefore, we
overrule appellant=s first
issue.     








B.        Did the trial court admit evidence of an extraneous offense
and, if so, does this ruling present grounds for reversal?

In his
second issue, appellant contends that the trial court erred in admitting
evidence of an extraneous offense in violation of Texas Rules of Evidence 403
and 404(b).  At trial, Susan Froebel, a
witness for the State, identified appellant as the same person she saw walk out
of her office building in Clear Lake and drive away in a dark, brownish-maroon,
late-model car.  The State offered this
testimony to bolster a witness=s
identification of appellant leaving the scene of the attack against Canales in
a brown, late-model, four-door Honda Accord. 
The trial court overruled appellant=s
objection, finding that the probative value of Froebel=s
testimony outweighed its prejudicial effect.    


Appellant argues that the jury
could have inferred from Froebel=s
testimony that appellant committed an extraneous offense.  On direct examination, Froebel identified
appellant as the same man depicted in the surveillance photographs Detective
Sherrouse had shown Canales.  At the
motion to suppress hearing, Canales testified that when she viewed the
surveillance photographs, Detective Sherrouse told her that they were from an
office building in Clear Lake and related to a crime committed there.  Appellant asserts that the jury also could
have concluded that there was an offense committed at that office building
because the police would not have obtained surveillance photos of appellant
otherwise.   








Evidence of an extraneous offense
must involve evidence of prior criminal conduct by the accused.  See McKay v. State, 707 S.W.2d 23, 31B32 (Tex.
Crim. App. 1985).  If the evidence does
not show that the accused was connected to an offense, then evidence of an
extraneous offense is not established and no improper extraneous offense
evidence is admitted.  Id. at
32.  The jury was not privy to Canales=s
testimony in the motion to suppress hearing so the jury did not know that the
surveillance photos were connected with another crime.  Froebel=s
testimony at the guilt-innocence phase of the trial was limited to the
identification of appellant and the type of vehicle he drove.  Froebel=s
testimony did not suggest that appellant was involved in an extraneous offense
because the jury did not know appellant was suspected of another crime.  Additionally, the existence of surveillance
photos does not necessarily indicate that appellant was involved in an extraneous
offense.  Because Froebel=s
testimony did not show that appellant committed a prior offense, the
surveillance photos did not constitute evidence of an improper extraneous
offense.  Id.  Accordingly, we overrule appellant=s second
issue.

Having overruled all of appellant=s issues,
we affirm the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Memorandum Opinion filed January 27, 2005.

Panel consists of Justices Anderson, Hudson, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  Appellant also
argues on appeal that the in-court identifications of appellant by Samuel
Garcia, Barbara Benevides, and Debbie Alberts were tainted by suggestive
pre-trial identification procedures.  We
do not address the admissibility of these identifications because appellant
never objected to them at trial and therefore, failed to properly preserve
error for appeal.  See Tex. R. App. P. 33.1(a)(1).